IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                          |   |                              |
|--------------------------|---|------------------------------|
| EDMUND AWAH              | : |                              |
|                          | : |                              |
| v.                       | : | Civil Action No. DKC 14-1288 |
|                          | : |                              |
| CAPITAL ONE BANK, N.A.   | : |                              |
|                          | : |                              |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this consumer
case are the following motions: (1) a partial motion to dismiss
filed by Defendant Capital One Bank, N.A. ("Defendant") (ECF No.
32); (2) a motion for enlargement of time to file a status
report filed by Plaintiff Edmund Awah ("Plaintiff") (ECF No.
44); (3) a motion for summary judgment filed by Defendant (ECF
No. 48); and (4) a motion to remand filed by Plaintiff (ECF No.
54). The issues have been briefed, and the court now rules, no
hearing being deemed necessary. Local Rule 105.6. For the
following reasons, Defendant's motion for summary judgment will
be granted. Plaintiff's motion to remand will be denied.
Plaintiff's request for a time extension and Defendant's partial
motion to dismiss will be denied as moot.

**I. Background**

**A. Factual Background**

Plaintiff maintained a checking account (the "Account") and
line of credit (the "Line of Credit") with Defendant. The

accounts were linked to prevent an overdraft of funds from the Account. (ECF No. 48-1, at 2). In October 2011, the Account and Line of Credit reflected a balance due of $570.39. (ECF Nos. 34 ¶ 2). On October 19, Plaintiff deposited two checks – check number 680 for $506.52 and check number 681 for $70.39 – toward the outstanding balance on the Line of Credit. (ECF Nos. 53-4, at 2; 53-5, at 2). Plaintiff alleges that "Defendant did not credit Plaintiff's checking accounts with the two check deposits." (ECF No. 34 ¶ 8). According to Plaintiff, "[he] made several efforts to find out from Defendant the reasons for not crediting Plaintiff's checking accounts with the two check deposits. Defendant failed to provide any rational reason." (ECF No. 34 ¶ 9). Plaintiff's Account Statement, however, reflects that Plaintiff's payment of $506.52 was applied to the Line of Credit balance on October 19, leaving Plaintiff with a $0.00 balance and $500.00 of available credit. (ECF No. 48-5, at 2, 4). The same Account Statement appears to reflect indirectly Plaintiff's payment of $70.39. Included on a list of transactions concerning the Account is a customer deposit of $80.39 on October 19. According to Defendant, the customer deposit constitutes Plaintiff's $70.39 payment and an overdraft fee reversal. (ECF Nos. 55, at 6; 48-5, at 6).

The Line of Credit continued to reflect a $0.00 balance the following month. (ECF No. 48-6, at 2, 4). In November 2011,

the Line of Credit was closed, and the corresponding Account Statement includes no information concerning the Line of Credit. (*See* ECF No. 48-7, at 2). Plaintiff subsequently contacted Defendant to reopen the Line of Credit, and Defendant reopened the Line of Credit on or about December 21. (ECF Nos. 49, at 2-3; 48-8, at 2). Plaintiff used the Line of Credit and the overdraft protection it provided for the Account. In February and March 2012, Plaintiff used $500.00 – all of his available credit. (ECF No. 48-1, at 3). On February 16, Plaintiff transferred $200.00 from the Line of Credit to cover an overdraft on the Account. (ECF No. 48-9, at 4). He transferred an additional $100.00 into the Account on February 27, February 28, and March 5. (ECF No. 48-10, at 4). Plaintiff failed to make any payment toward the Line of Credit after October 19, 2011. (ECF No. 48-1, at 4 (citing ECF No. 48-3 ¶ 11)).

Defendant's representatives communicated with Plaintiff during March and April 2012 seeking payment toward the outstanding balance of the Line of Credit. (*See* ECF No. 49, at 4-5). Plaintiff failed to make any payment. On April 9, Defendant sent Plaintiff a letter informing him that his Line of Credit "has been BLOCKED against future advance activity, due to the following principal reason: Delinquency." (ECF No. 48-11, at 2). Defendant's representatives continued to communicate with Plaintiff and seek payment. (*See* ECF No. 49, at 5-11). On

June 23, Defendant's representative advised Plaintiff that the Line of Credit "would be charged off (*i.e.*, cancelled and his debt written off) if he failed to pay by the following month." (ECF No. 48-1, at 4 (citing ECF No. 49, at 11)).  On or about August 2, Defendant charged off the Line of Credit and made no further attempts to contact Plaintiff.  (*Id.* (citing ECF No. 49, at 14)).  Plaintiff alleges that "Defendant then proceeded to file a false and derogatory report on Plaintiff's [c]redit [f]ile with the three [c]redit [b]ureaus.  The report was not only false, it was malicious since Defendant reported an outstanding balance of $1244.00 instead of $570.39." (ECF No. 34 ¶ 12).  According to Plaintiff, he "disputed the false entries on Plaintiff's [c]redit [f]ile by Defendant with the [c]redit [b]ureaus."  (*Id.* ¶ 13).  Furthermore, Plaintiff contends that "[f]rom late 2011 through early 2013, Defendant placed a constant barrage of harassing telephone calls telephone calls to Plaintiff demanding the payment of the balance of the Line of Credit." (*Id.* ¶ 14).

**B.  Procedural History**

Plaintiff, proceeding *pro se*, first sued Defendant in this court on March 7, 2013.  *See Awah v. Capital One Bank*, Case No. 13-CV-00706 (D.Md. 2013).  Plaintiff's motion to dismiss his complaint voluntarily and without prejudice was granted on September 19, 2013.  Plaintiff, again proceeding *pro se*,

4

commenced this action in the District Court of Maryland for Prince George's County by filing a complaint against Defendant on February 11, 2014. (ECF No. 2). Defendant removed the action to this court on April 16, 2014, citing federal question jurisdiction as the jurisdictional basis. (ECF No. 1). Plaintiff's complaint alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, because Defendant allegedly "filed a derogatory report on Plaintiff's credit file." (ECF No. 2, at 1).

By memorandum opinion and order on January 22, 2015, the court adjudicated Plaintiff's motion to remand, motion for leave to file an amended complaint, and Defendant's motion to dismiss. (ECF Nos. 19; 20). The court noted that, at the time of removal, Plaintiff's complaint expressly indicated that his action was premised on alleged violations of the FDCPA, a federal statute, and thus removal was proper. (ECF No. 19, at 6). Following removal, Plaintiff sought to amend his complaint, indicating that he no longer asserted claims under the FDCPA, instead opting to proceed under the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law § 14-201 *et seq.* (ECF No. 16). The court permitted Plaintiff to file an amended complaint and observed: "If the new complaint does not state a federal cause of action and Plaintiff's only viable claims pertain to Defendant's methods of collection under MCDCA,

5

then the court *may* exercise its discretion and remand the case to state court." (ECF No. 19, at 7-8 (emphasis added)).

On February 9, 2015, Plaintiff filed an amended complaint, asserting violations of the MCDCA and requesting actual damages in the amount of $100,000 and $200,000 in punitive damages. (ECF No. 21). Defendant answered the amended complaint on February 27. (ECF No. 22). The court entered a scheduling order on March 2, implicitly deciding not to remand the supplemental state law claims. (ECF No. 24). On March 18, Plaintiff again sought leave to amend his complaint. (ECF No. 30). Defendant did not oppose the motion. The court issued an order on April 6, allowing Plaintiff to file a second amended complaint. (ECF No. 31). Plaintiff filed the second amended complaint, adding claims against Defendant in Count II under the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-301 *et seq.* (ECF No. 34). Plaintiff demands, *inter alia*, "compensatory and punitive relief in an amount to be determined at trial." (*Id.* at 4). Shortly thereafter, Plaintiff again moved to remand the action to state court (ECF No. 36). The court denied Plaintiff's motion to remand, determining that "[t]here is no question that the court maintains subject matter jurisdiction over the claims and the only issue is whether it should exercise its discretion and remand. Here, a scheduling order has already been issued and

the parties are well into discovery." (ECF No. 42, at 5-6).
Accordingly, the court chose not to remand the action to state court.

Defendant filed a partial motion to dismiss Count II of the second amended complaint for failure to state a claim. (ECF No. 32). Plaintiff responded in opposition (ECF No. 35), and Defendant replied (ECF No. 37). On June 26, Plaintiff filed a motion for an extension of time to file a status report (ECF No. 44), which Defendant opposed (ECF No. 46). Plaintiff, however, filed a status report on July 8. (ECF No. 45).[1] Defendant moved for summary judgment on all claims in the second amended complaint. (ECF No. 48). Plaintiff was provided with a *Roseboro* notice, which advised him of the pendency of the summary judgment motion and his entitlement to respond within 17 days. (ECF No. 50); *see Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975) (holding that *pro se* plaintiffs should be advised of their right to file responsive material to a motion for summary judgment). Plaintiff responded (ECF No. 53), and Defendant replied (ECF No. 55). Plaintiff filed a "motion on

---

[1] Given that Plaintiff filed a status report soon after moving for an extension, his pending motion for an extension of time will be denied as moot.

remand" on September 29 (ECF No. 54), which Defendant opposed (ECF No. 56).[2]

## II.  Defendant's Motion for Summary Judgment[3]

### A.   Standard of Review

A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Liberty*

---

[2] In his remand motion, Plaintiff informs the court that, should Defendant prevail on its summary judgment motion, "then Plaintiff will respectfully request the remand." (ECF No 54, at 1).  Defendant responded in opposition "[o]ut of an abundance of caution."  (ECF No. 56, at 1).  Prior court opinions have addressed the propriety of removal (ECF No. 19) and denied Plaintiff's previous motion to remand (ECF No. 42).  To reiterate, "[t]here is no question that the court maintains subject matter jurisdiction over the claims and the only issue is whether it should exercise its discretion and remand." (ECF No. 42, at 5).  Here, discovery has concluded and a dispositive motion is pending.  Accordingly, insofar as Plaintiff's motion is construed as a pending motion to remand, it will be denied. This court retains jurisdiction over the case and will consider Defendant's summary judgment motion.

[3] Defendant's motion for summary judgment is fully briefed. (ECF Nos. 48; 53; 55).  Accordingly, Defendant's partial motion to dismiss (ECF No. 32) will be denied as moot, and the court will consider the substantive legal issues addressed on summary judgment.

*Lobby*, 477 U.S. at 250; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

The moving party bears the burden of showing that there is no genuine dispute as to any material fact.  However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *Celotex*, 477 U.S. at 322-23.  Therefore, on those issues for which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an "affidavit or other evidentiary showing" demonstrating that there is a genuine issue for trial.  *See Ross v. Early*, 899 F.Supp.2d 415, 420 (D.Md. 2012), *aff'd*, 746 F.3d 546 (4th Cir. 2014).  "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted).  Although *pro se* litigants are to be given some latitude, the above standards apply to everyone.  Thus, as courts have recognized repeatedly, even a *pro se* party may not avoid summary judgment by relying on bald assertions and speculative arguments.  *See Smith v. Vilsack*, 832 F.Supp.2d 573, 580 (D.Md. 2011) (citing cases).

B.   **Analysis**

1.   **MCDCA (Count I)**

Plaintiff asserts an MCDCA claim against Defendant in Count I of the second amended complaint.  According to Plaintiff, "Defendant's relentless and unlawful conduct in harassing, abusing, coercing and oppressing [Plaintiff] to pay off a non-existent debt through numerous telephone calls over a period of more than a year was in violation of the MCDCA." (ECF No. 34 ¶ 15).  Plaintiff contends that he "advised Defendant on numerous occasions to put a stop to the persistent and harassing telephone calls, imploring Defendant to verify the retirement of the debt from the records.  Defendant ignored Plaintiff's advice and kept calling." (*Id.* ¶ 17).  Plaintiff alleges that he has suffered mental anguish as the direct and proximate result of Defendant's actions.  (*Id.* ¶¶ 18-20).  Defendant argues that "the uncontroverted facts establish that Plaintiff was indebted to [Defendant] under the Line of Credit, and that [Defendant] was therefore within its rights to seek payment." (ECF No. 48-1, at 8-9).  Furthermore, Defendant contends that "[Defendant's] communications to Plaintiff were limited, reasonable, professional, and complied with the MCDCA." (*Id.* at 10).

The MCDCA contains multiple provisions "prohibit[ing] debt collectors from utilizing threatening or underhanded methods in collecting or attempting to collect a delinquent debt." *Stovall*

*v. SunTrust Mortgage, Inc.*, No. RDB-10-2836, 2011 WL 4402680, at
*9 (D.Md. Sept. 20, 2011).   Pertinently, the statute proscribes
debt collectors from "[c]ommunicat[ing] with the debtor or a
person related to him with the frequency, at the unusual hours,
or in any other manner as reasonably can be expected to abuse or
harass the debtor."   Md. Code Ann., Com. Law § 14-202(6).   Nor
may debt collectors "[u]se obscene or grossly abusive language
in communicating with the debtor or a person related to him."
*Id.* § 14-202(7).   The MCDCA also provides that, in collecting or
attempting to collect an alleged debt, a collector may not
engage   in   various   activities,   including   "claim[ing],
attempt[ing], or threaten[ing] to enforce a right with knowledge
that the right does not exist."   *Id.* § 14-202(8).   To succeed
under § 14-202(8), Plaintiff must satisfy two elements: (1) that
Defendant did not possess the right to collect the amount of
debt sought; and (2) that Defendant attempted to collect the
debt knowing that it lacked the right to do so.   *See Lewis v.
McCabe, Weisberg, & Conway, LLC*, No. DKC-13-1561, 2014 WL
3845833, at *6 (D.Md. Aug. 4, 2014).   "The key to prevailing on
a [§ 14-202(8) claim] is to demonstrate that the defendant
'acted with knowledge as to the *invalidity* of the debt.'"   *Pugh
v. Corelogic Credco, LLC*, No. DKC-13-1602, 2013 WL 5655705, at
*4 (D.Md. Oct. 16, 2013) (emphasis in original) (quoting *Stewart
v. Bierman*, 859 F.Supp.2d 754, 769 (D.Md. 2012)).

Judge Williams's analysis is instructive:

> The MCDCA, and in particular § 14-202, is meant to proscribe certain *methods* of debt collection and is not a mechanism for attacking the validity of the debt itself. The Act proscribes certain *conduct*, (1) through (9), by a collector in "collecting or attempting to collect an *alleged debt* . . . ." Md. Code Ann., Com. Law § 14-202 (emphasis added). In other words, the [MCDCA] focuses on the conduct of the debt collector in attempting to collect on the debt, whether or not the debt itself is valid. Plaintiff contends that she is entitled to relief under paragraph (8) of the provision based on Defendants' knowledge that the underlying debt did not exist. Paragraph (8) provides that a collector, in attempting to collect an alleged debt, may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." *Id*. § 14-202(8). Section [] 14-202(8) only makes grammatical sense if the underlying debt, expressly defined to include an alleged debt, is assumed to exist, and the specific prohibitions are interpreted as proscribing certain methods of debt collection rather than the debt itself.

*Fontell v. Hassett*, 870 F.Supp.2d 395, 405-06 (D.Md. 2012) (emphases in original). Here, Plaintiff adduces no evidence that the debt was non-existent, or that Defendant had knowledge of the same. The uncontroverted evidence establishes that Plaintiff owed an outstanding balance on the Line of Credit, which was tied to the Account. In February and March 2012, Plaintiff drew upon the Line of Credit to transfer funds into the Account. (ECF Nos. 48-9, at 4; 48-10, at 4). Although the

Line of Credit reflected a $0.00 balance as of October 25, 2011,
Plaintiff exhausted his credit limit of $500.00 in March 2012,
and the Line of Credit became delinquent.  Plaintiff has failed
to contradict the evidence of his outstanding debt.  Nor has he
supplied evidence that Defendant acted with knowledge that the
debt was invalid or that it lacked the right to collect it.
Moreover, by asserting that Defendant harassed him in pursuit of
a non-existent debt, Plaintiff implicitly challenges the
validity of the debt owed.  He argues that "Plaintiff did not
owe $1,244.00 to Defendant, an amount Defendant was attempting
to collect." (ECF No. 53, at 12).  Plaintiff, however, cannot
challenge the validity of the underlying debt under the MCDCA.
Accordingly, insofar as Plaintiff contests the legitimacy of the
outstanding balance on the Line of Credit, his claim fails.

Defendant also argues that its communications with
Plaintiff were reasonable under the MCDCA, and that Plaintiff
has not produced any evidence to the contrary.  Plaintiff
contends that Defendant violated § 14-202(6) and § 14-202(7) as
a result of Defendant's "two[-]year-long telephone
communications with Plaintiff at unusual hours or in a manner as
reasonably can be expected to harass or abuse Plaintiff." (ECF
No. 53, at 13).  Plaintiff's opposition to summary judgment does
not include an affidavit or declaration executed by him to
substantiate the allegations of the second amended complaint.

Rather, in support of his claim, Plaintiff offers sworn affidavits from a relative and a friend, as well as a psychological profile created by a clinical psychologist. (ECF Nos. 53-9; 53-10; 53-11). Plaintiff failed to identify each of the three individuals during discovery, listing only "Abigail Osei" as a potential witness or expert witness at trial. (ECF No. 48-12, at 2, 4).

Plaintiff's attached exhibits were not produced during discovery, even though a request for production of documents and potential witnesses had been propounded to him. (*See id.*). Under the Federal Rules of Civil Procedure, parties must disclose, "without awaiting a discovery request, . . . the name . . . of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims." Fed.R.Civ.P. 26(a)(1)(A)(i). "The purpose of Rule 26(a) is to allow the parties to adequately prepare their cases for trial and to avoid unfair surprise." *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014) (citation omitted). "If a party fails to . . . identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that . . . witness to supply evidence on a motion, . . . unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1). Here, Plaintiff is not substantially justified in relying on these individuals' sworn testimony for

the first time in his opposition to summary judgment, having withheld their identities during discovery without explanation. As a result, Defendant has been deprived of the opportunity to depose the affiants and evaluate their recollection of the underlying facts. In these circumstances, the United States Court of Appeals for the Fourth Circuit grants district courts "particularly wide latitude . . . to issue sanctions under Rule 37(c)(1)." *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 278-79 (4th Cir. 2005) (noting that a "party that fails to provide [Rule 26] disclosures unfairly inhibits its opponent's ability to properly prepare, unnecessarily prolongs litigation, and undermines the district court's management of the case"). Here, the appropriate sanction is to strike the affidavits and "exhibits that [Plaintiff] attached to [his] summary judgment opposition . . . because they were not produced during discovery." *Blankson-Arkoful v. Sunrise Senior Living Servs., Inc.*, No. JFM-09-2291, 2010 WL 2719877, at *1 (D.Md. July 8, 2010) (citing *Blundell v. Wake Forest Univ. Baptist Med. Ctr.*, No. 1:03CV998, 2006 WL 694630, at *1 (M.D.N.C. Mar. 15, 2006)), *aff'd sub nom. Blankson-Arkoful v. Sunrise Sr. Living Servs., Inc.*, 449 F.App'x 263 (4th Cir. 2011).

Aside from the stricken affidavits, Plaintiff adduces no evidence to support his MCDCA claim or create a genuine issue of material fact. In contrast, Defendant provides a database

report documenting collection history and communications between Plaintiff and Defendant's representatives. The document contains 151 entries, which include notations of "[Defendant's] employees reviewing the [A]ccount, working with Plaintiff to reopen the [L]ine of [C]redit before it became delinquent, and other non-call administrative notes." (ECF No. 55, at 9). According to Defendant, an examination of the collection history report reveals that Defendant's representatives called Plaintiff approximately 64 times between December 2011 and August 2012, and there is no evidence that these calls were placed at unusual hours or in frequent succession. (*Id.; see* ECF No. 49). Notes contained within the collection history report show that Defendant's representatives contacted him about reopening his Line of Credit in December 2011, to seek updates about Plaintiff's outstanding debt in the spring and summer 2012, and to follow up when Plaintiff failed to return their calls. (ECF No. 55, at 9). Furthermore, Plaintiff offers no evidence – either his own or from Defendant's collection history report - to support his contention that Defendant's representatives called him after August 2012. Throughout the communications, there is no evidence that Defendant's representatives used abusive, profane, or harassing language.

The collection history report does not evidence objectionable and harassing conduct sufficient to support

16

finding that Defendant violated the MCDCA.  *See Hamilton v. Ford Motor Credit Co.*, 66 Md. App. 46, 67 (1986) (denying summary judgment when the debt collectors called the debtor "several times, despite protestations that [she] was unable to pay the debt, . . . that her husband was ill and the telephone calls were disturbing; they called despite [her] requests to stop calling; and they called at least once late at night").  In the analogous FDCPA context, whether there is actionable harassment or annoyance turns on the volume and pattern of calls placed.[4] *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F.Supp.2d 492, 505 (D.Md. 2004); *see Beeders v. Gulf Coast Collection Bureau*, 796 F.Supp.2d 1335, 1338 (M.D.Fla.) (granting the defendant's summary judgment motion when the plaintiff alleged that 40 calls were made over the course of five months because the "calls did not constitute 'egregious conduct' meant to harass, annoy, or abuse the Plaintiff"), *aff'd sub nom. Beeders v. Gulf Coast Collection Bureau, Inc.*, 432 F.App'x 918 (11th Cir. 2011); *Arteaga v. Asset Acceptance, LLC*, 733 F.Supp.2d 1218, 1229 (E.D.Cal. 2010) (noting that "daily" or "near daily" phone calls fail to raise an issue of fact for a jury to determine whether the conduct violates the FDCPA).  "However, the case may be

---

[4] The FDCPA prohibits debt collectors from "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5).

that, based on the undisputed facts, a defendant's conduct does not, as a matter of law, violate the prohibition of harassing and abusive collection tactics." *Askew v. HRFC, LLC*, No. RDB-12-3466, 2014 WL 1235922, at *10 (D.Md. Mar. 25, 2014) (citing *Mateti v. Activus Fin.*, LLC, No. DKC-08-0540, 2009 WL 2507423, at *13 (D.Md. Aug 14, 2009)), *aff'd in part, rev'd in part and remanded*, 810 F.3d 263 (4th Cir. 2016).

Absent additional evidence that the telephone calls were placed "with the frequency, at the unusual hours, or in any other manner as reasonably can be expected to abuse or harass the debtor," Defendant's conduct did not rise to the level of harassment required to find a violation of the MCDCA.  Md. Code Ann., Com. Law § 14-202(6).  Moreover, Plaintiff's conclusory allegations that the calls continued into the early months of 2014 are insufficient to create a genuine issue of material fact.  Accordingly, Plaintiff's MCDCA claims cannot withstand summary judgment review.  Defendant's summary judgment motion on will be granted, and judgment will be entered against Plaintiff on Count I.

### 2.   MCPA (Count II)

In Count II of the second amended complaint, Plaintiff asserts an MCPA claim against Defendant.  According to Plaintiff, Defendant "file[d] a false and derogatory report on Plaintiff's [c]redit [f]ile with the three [c]redit [b]ureaus.

18

The report was not only false, it was malicious since Defendant reported an outstanding balance of $1244.00 instead of $570.39. Plaintiff disputed the false entries on Plaintiff's [c]redit [f]ile . . . with the [c]redit [b]ureaus." (ECF No. 34 ¶¶ 12-13). As a result, Plaintiff argues, "Defendant committed unfair and/or deceptive acts and practices, including but not limited to fraudulent concealment, in connection with the consumer transaction." (*Id.* ¶ 23). He contends generally that he "has suffered damages" as the direct and proximate result of Defendant's actions. (*Id.* ¶ 24). Defendant argues that Plaintiff has failed to produce any evidence in support of his MCPA claim. (ECF No. 48-1, at 13). Moreover, Defendant asserts that Plaintiff's MCPA claim concerning alleged inaccurate reporting to credit agencies is preempted by federal law. (*Id.* at 15).

The MCPA prohibits commercial entities from engaging in any "unfair or deceptive trade practice" in "[t]he collection of consumer debts." Md. Code Ann., Com. Law § 13-303(5). To prevail under the MCPA, Plaintiff must establish: "(1) an unfair or deceptive practice or misrepresentation that (2) is relied upon, and (3) causes [him] actual injury." *Bierman*, 859 F.Supp.2d at 768 (citing *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 143 (2007)). Plaintiff alleges that Defendant engaged in "unfair or deceptive" trade practices under the MCPA, which

include "false . . . or misleading oral or written statement[s] . . . or other representations . . . [that have] the capacity, tendency, or effect of deceiving or misleading consumers." Md. Code Ann., Com. Law § 13-301(1).[5]   Plaintiff also alleges generally that Defendant violated § 13-301(3) by failing to state a material fact if the failure deceives or tends to deceive, and § 13-301(9) by engaging in deception, fraud, false pretense, misrepresentation, and knowing concealment and omission of material facts with the intent that Plaintiff relied upon the same in connection with financial transactions of consumer services. (ECF No. 34 ¶ 23(b)-(c)).

Here, Plaintiff again fails to forecast evidence to support his claims. Asserting a violation of § 13-301(1), Plaintiff alleges vaguely that Defendant made "false and misleading oral and written statements and other representations which had the capacity, tendency, or effect of deceiving or misleading [] Plaintiff." (ECF No. 34 ¶ 23(a)). Plaintiff's allegation recites formulaically the statutory language of § 13-301(1) and appears to identify Defendant's purported credit reports as unlawful misrepresentations. The remaining allegations in Count

---

[5] The MCPA establishes that, by definition, the violation of several other enumerated Maryland statutes, including the MCDCA, constitutes unfair or deceptive trade practices proscribed by the MCPA. *See* Md. Code Ann., Com. Law § 13-301(14) (enumerating incorporated statutes). Plaintiff does not prevail on his MCDCA violation; thus, an MCPA claim premised on Defendant's violation of the MCDCA is not viable.

II similarly mirror the statutory language of § 13-301(3) and § 13-301(9). (*Id.* ¶ 23(b)-(c)). In his opposition to summary judgment, Plaintiff argues that Defendant violated the MCPA "[b]y filing a false entry on Plaintiff's credit file, knowingly maintaining false banking records for Plaintiff and by attempting to collect on a non-existent debt." (ECF No. 53, at 17). He concludes that his credit report "strongly demonstrates that Defendant['s] claim that Plaintiff had a balance of $1,244.00 on Plaintiff's Line of Credit was manifestly incorrect." (*Id.* at 16). However, nothing in the record establishes – let alone creates a dispute of fact – that Defendant misled Plaintiff by manipulating or maintaining inaccurate banking records. Instead, the documentary evidence produced by Defendant shows that Plaintiff's payment in October 2011 was applied to the Line of Credit, resulting in a $0.00 balance. The Line of Credit was closed and later reopened at Plaintiff's request. Plaintiff then exhausted his credit limit of $500.00 in March 2012 after drawing upon the Line of Credit to transfer funds into the Account. (ECF Nos. 48-9, at 4; 48-10, at 4). The Line of Credit became delinquent and was charged off in August 2012. (ECF No. 49, at 14). Plaintiff has failed to contradict the evidence of his outstanding debt and establish that Defendant's banking records are inaccurate. His allegation

that Defendant "manipulate[d] [the Account] and banking records"
simply finds no support in the record. (ECF No. 53, at 17).[6]

Furthermore, insofar as Plaintiff's MCPA claim is based on
Defendant's purported false reporting to the credit agencies, it
is preempted. According to Plaintiff, "Defendant was collecting
on a balance in the amount of $1,244.00 and . . . reported the
debt to the [c]redit [b]ureaus." (*Id.* at 16). Plaintiff
asserts that "[t]he false report on [his] [credit] history has
been report[ed] for the past three years, and in spite of
Plaintiff's numerous attempts to get Defendant to rectify the
false reporting." (*Id.* at 18). Defendant contends that to the
extent that Plaintiff asserts a claim under the MCPA for false
reporting to credit agencies, such a claim is preempted by the
Fair Credit Reporting Act ("FCRA"), 15 U.S.C.A. § 1681 *et seq.*
(ECF No. 48-1, at 15-18). According to Defendant, §§
1681t(b)(1)(F) and 1681s-2(a)(1)(A) of the FCRA preempt any
state law claims under the MCPA related to the provision of

---

[6] Moreover, Plaintiff offers no evidence that Defendant
reported a debt of $1,244.00. As Defendant contends, "Plaintiff
makes previously unalleged statements that [Defendant] somehow
demanded payment from him in the amount of $1,244.00 based on
the [TransUnion] [c]redit [r]eport" supplied by Plaintiff. (ECF
No. 55, at 7). The sole reference in the record to a balance
$1,244.00 is in Plaintiff's credit report, a document maintained
by TransUnion, not Defendant. (ECF No. 55, at 7; *see* ECF No.
53-8, at 2).

credit information to consumer reporting agencies.[7]   The FCRA provides that "[n]o requirement or prohibition may be imposed under the laws of any State . . . [w]ith respect to any subject matter regulated under . . . [§] 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies."   15 U.S.C. § 1681t(b)(1)(F). Accordingly:

> [S]ection 1681t(b)(1)(F) preempts state statutory claims that are based on the responsibilities of those who report credit information to [credit reporting agencies ("CRAs")].   *See* 15 U.S.C. § 1681s-2(a)[] (encompassing the "[d]uty of furnishers of information to provide accurate information" which includes correcting any errors in reporting, and the duties of furnishers of information "[a]fter receiving notice . . . of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency," which includes conducting an investigation into the dispute and correcting any errors discovered with the CRAs).

*Davenport v. Sallie Mae, Inc.*, No. PJM-12-1475, 2013 WL 4010983, at *5 (D.Md. Aug. 2, 2013).   "Congress's intent in § 1681t(b) is clear that § 1681s-2(a)(1)(A) preempts any state law claims related to such knowing disclosures."   *Alston v. Equifax*

---

[7]   Section 1681h(e) was intended to govern preemption of common-law claims while § 1681t(b) was intended to govern preemption of state statutory claims. *See Beuster v. Equifax Information Servs.*, 435 F.Supp.2d 471, 474-79 (D.Md. 2006). Section 1681h(e) specifically references actions "in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information."   Here, Plaintiff does not assert any common law claims.

*Information Services, LLC, et al.*, No. GLR-13-934, 2014 WL 580148, at *5 (D.Md. Feb. 11, 2014). Here, Plaintiff cannot establish a claim under the MCPA insofar as it is premised on Defendant's alleged false reporting to a consumer reporting agency because his claim falls squarely within § 1681t(b)(1)(F) and is preempted by the FCRA. Count II of the second amended complaint "alleges a willful breach of the responsibilities and duties contained in § 1681s-2 and 'runs into the teeth of the FCRA preemption provision.'" *Davenport*, 2013 WL 4010983, at *5 (quoting *Ross v. F.D.I.C.*, 625 F.3d 808, 813 (4th Cir. 2010)) (dismissing as preempted the plaintiff's MCDCA and MCPA claims premised on the defendant's reporting of inaccurate information).

Assuming *arguendo* that Plaintiff asserts an FCRA claim against Defendant, it cannot withstand summary judgment review.[8] The FCRA imposes duties on "furnishers of information" to credit reporting agencies. 15 U.S.C. § 1681s-2. The "FCRA explicitly bars suits for violations of § 1681-2(a), but consumers can still bring private suits for violations of § 1681s-2(b)." *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 149 (4th Cir. 2008) (citing § 1681s-2(c)); *see, e.g., Beattie v. Nations Credit Fin. Servs. Corp.*, 69 F.App'x 585, 589 (4th Cir.

---

[8] In his opposition to summary judgment, however, Plaintiff affirms that he does not assert a federal claim under the FCRA. (*See* ECF No. 53, at 19).

2003) ("[T]he FCRA does not provide the [plaintiffs] with a private cause of action [for a violation of § 1681s-2(a)(1)(A)]. More specifically, this particular statutory language may be enforced only by federal and state agencies and officials.").

> [T]o bring a claim under § 1681s-2(b), a plaintiff must establish three elements: (1) that he or she notified the consumer reporting agency of the disputed information, (2) that the consumer reporting agency notified the defendant furnisher of the dispute, and (3) that the furnisher then failed to investigate and modify the accurate information.

*Ausar-El v. Barclay Bank Delaware*, No. PJM-12-0082, 2012 WL 3137151, at *3 (D.Md. July 31, 2012) (citations omitted). Under § 1681s-2(b), it would not suffice for Plaintiff to have notified Defendant himself; rather, the notice must instead have come from the consumer reporting agency. *Id.* at *3 n.2. Here, Plaintiff has failed to produce evidence that he notified a credit reporting agency of Defendant's alleged inaccurate banking and credit records. Nor is there support in the record to satisfy the other elements of a § 1681s-2(b) claim – that Defendant received notification of a dispute from a credit reporting agency and that Defendant failed to investigate such a dispute. *See Akpan v. First Premier Bank*, No. DKC-09-1120, 2010 WL 917886, at *3 (D.Md. Mar. 8, 2010) (dismissing the complaint because the plaintiff failed to include allegations sufficient to state a claim under 15 U.S.C. § 1681s-2(b)). Accordingly,

even construing Count II to include an FCRA claim, it cannot withstand summary judgment review. Defendant is entitled to summary judgment, and judgment will be entered against Plaintiff on all claims in Count II.

## III. Conclusion

For the foregoing reasons, the Defendant's motion for summary judgment will be granted. Plaintiff's motion to remand will be denied. Defendant's partial motion to dismiss and Plaintiff's request for an enlargement of time to file a status report will be denied as moot. A separate order will follow.


                                    /s/
                    _____
                    DEBORAH K. CHASANOW
                    United States District Judge